# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONALD W. MELTON, JR. )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of the Social Security** )<br>**Administration,**[1] )<br>)<br>    Defendant. ) | Case No. CIV-18-1030-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald W. Melton, Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) denial of disability benefits. The SSA Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the SSA denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision.

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

(TR. 31-48). The Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. (TR. 1-4).

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 4, 2014, his amended alleged onset date. (TR. 34). At step two, the ALJ determined that Mr. Melton had the following severe impairments: disorder of the back, lumbar spine, status-post discectomy; partial amputation of the left foot; partial amputation of the right foot; and affective disorder. (TR. 34). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 35).

At step four, the ALJ concluded that Mr. Melton was unable to perform his past relevant work, but retained the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the following additional limitations: tasks performed primarily performed at a work station; he can perform simple and routine tasks consistent with unskilled work involving no more than occasional, superficial interaction with the general public (considered brief, succinct and task oriented); and no more than occasional interaction with coworkers.

(TR. 38, 46). Based on the finding that Mr. Melton could not perform his past relevant work, the ALJ proceeded to step five. There, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national

economy that Plaintiff could perform. (TR. 181-182). Given the limitations, the VE identified four jobs from the Dictionary of Occupational Titles. (TR. 182). The ALJ adopted the testimony of the VE and concluded that Mr. Melton was not disabled based on his ability to perform the identified jobs. (TR. 47-48).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUES PRESENTED

Mr. Melton alleges: (1) the Appeals Council erred by failing to consider certain evidence and (2) the ALJ erred at step five. (ECF No. 19:4-11).

3

## V. ERROR BY THE APPEALS COUNCIL

Mr. Melton alleges error in the Appeals Council's failure to consider evidence submitted with Plaintiff's request for review. (ECF No. 19:4-6). The Court agrees with Plaintiff.

### A. The Evidence

When Plaintiff requested review by the Appeals Council following the unfavorable decision, he submitted additional evidence of a "Medical Source Assessment" (MSA) and a "Residual Functional Capacity Secondary to Mental Impairments" form (RFC form), both dated March 21, 2018 and signed by Dr. Gabriel Cuka. (TR. 8-15). The MSA rated Plaintiff's mental abilities in four categories: Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaption. (TR. 8-9). Each category contained particular limitations which were rated "1-5." (TR. 8). A rating of "1" meant that the individual had the ability to perform the designated task with no observable limits. (TR. 8). A rating of "2" meant that the individual had the ability to perform the designated task, but with noticeable difficulty for no more than 10% or one hour or less of the workday. (TR. 8). A rating of "3" meant that the individual had the ability to perform the designated task, but with noticeable difficulty from 11-20% or more than one hour of the workday. (TR. 8). A rating of "4" meant that the individual had the ability to perform the designated task, but with noticeable difficulty for more than 20% or up to two hours of the workday. (TR. 8). And a rating of "5" meant that the individual was unable to perform the designated task. (TR. 8).

In the area of "Understanding and Memory," Dr. Cuka rated Plaintiff: a "4" in his abilities to "remember locations and work-like procedures" and "understand and remember very short, simple instructions" and a "5" in his ability to "understand and remember detailed instructions." (TR. 8).

In the area of "Sustained Concentration and Persistence," Dr. Cuka rated Plaintiff: a "3" in his ability to "carry out detailed instructions;" a "4" in his abilities to "maintain attention and concentration for extended periods of time" and "complete a normal workday;" and a "5" in his ability to "complete a normal work week (without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods)." (TR. 8-9).

In the area of "Social Interaction," Dr. Cuka rated Plaintiff: a "3" in his ability to interact appropriately with the general public;" a "4" in his ability to "accept instructions and respond appropriately to criticism from supervisors;" and a "5" in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (TR. 9).

Finally, in the area of "Adaption," Dr. Cuka rated Plaintiff a "3" in his ability to "set realistic goals or make plans independently of others." (TR. 9). The RFC form rated various work-related limitations in three areas: Occupational Functioning, Performance Adjustments—Adaptive Functioning, and Personal—Social Functioning. The levels of impairment included: "none," "mild" (5%), "moderate" (10-15%), "marked" (20-35%), "severe" (40-65%), "extreme," (70-95%) and "total" (100%).

In the area of "Occupational Functioning," Dr. Cuka rated Plaintiff: "severely" limited in his abilities to "maintain concentration for extended periods of time;" "complete a normal workday or work week (without interruptions from psychologically based symptoms) and perform at a consistent pace;" and "extremely" limited in his abilities to "understand and remember detailed or complex instructions;" "work in coordination or proximity to others without being distracted by them;" and "perform without an unreasonable number or length of rest periods." (TR. 12-13).

In the area of "Performance Adjustments—Adaptive Functioning," Dr. Cuka rated Plaintiff "severely" limited in his abilities to "respond appropriately to changes in work setting" and "respond and adjust to the use of new and unfamiliar tools and/or machines." (TR. 13).

And in the area of "Personal—Social Functioning," Dr. Cuka rated Plaintiff "extremely" limited in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (TR. 14).

### B. The Appeals Council's Decision/The Parties' Arguments

In declining Plaintiff's request for review, the Appeals Council stated:

> You … submitted … a Medical Source Assessment (signature illegible) dated March 21, 2018 (8 pages). The Administrative Law Judge decided your case through November 16, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 16, 2017.

(TR. 2). "[T]he Appeals Council's dismissal of the additional evidence's import on the grounds that it was not temporally relevant indicates that it ultimately found the evidence did not qualify for consideration at all." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir.

2013). This decision is supported by the regulations. *See* 20 C.F.R. §§ 404.970(a)(5) & 416.1470(a)(5) (noting that temporal relevance is a requirement to warrant consideration by the Appeals Council).

Mr. Melton alleges the Appeals Council erred in failing to consider the additional evidence. (ECF No. 19:4-6). In response, citing *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017), the Commissioner argues that the additional evidence is considered part of the administrative record before this Court to evaluate whether the ALJ's decision was supported by substantial evidence. (ECF No. 24:9). But Mr. Saul is mistaken, as that standard of review only applies when the Appeals Council has accepted the new evidence. *See Vallejo*, at 956 (noting that when claimant submits new evidence to Appeals Council *and Appeals Council accepts it*, that evidence becomes part of the record to be considered by court in performing substantial-evidence review) (emphasis added). Here, the Appeals Council did not accept the evidence—it rejected it on grounds that it was not temporally relevant. *See* TR. 2. Thus, the only issue is whether the Appeals Council erred in failing to consider the additional evidence, not whether the ALJ's decision was supported by substantial evidence, when considering the additional evidence. *See Padilla*, 525 F. App'x at 712 n.1 ("If the Appeals Council did not consider the additional evidence because it did not qualify for consideration …, then the question on appeal is whether the Appeals Council erred in failing to do so. If the Appeals Council did accept and consider the new evidence, then the question on appeal is whether the ALJ's decision was supported by substantial evidence in light of the new evidence.").

### C. Error in the Appeals Council's Failure to Consider the Additional Evidence

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003). Additional evidence should only be considered by the Appeals Council if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) & 416.1470(a)(5).

As stated, the Appeals Council's failure to consider the evidence was based on a finding that the evidence "[did] not relate to the period at issue" because it was dated after the ALJ's decision. (TR. 2). But evidence which post-dates the ALJ's decision can be considered "chronologically pertinent" if it "relates to the time period before the ALJ's decision." *Padilla*, at 713. Here, the evidence most certainly "relates to the time period before the ALJ's decision"—the MSA and RFC form re-stated Dr. Cuka's previous diagnoses of Bipolar Disorder, Major Depressive Disorder, Anxiety Disorder, and Schizoaffective Disorder and elaborated on specific impairments relating to the same. *See Padilla*, at 713 (evidence is considered temporally relevant for purposes of Appeals Council review when it corroborates a prior diagnosis). Thus, the only remaining issues are whether the evidence is considered "new" and "material" and whether a probability exists that consideration of the additional evidence would have changed the outcome of the decision.

Evidence is considered "new" "if it is not duplicative or cumulative," and it is considered "material" "if there is a reasonable possibility that it would have changed the outcome." *See supra*, *Threet*. The Court finds that the additional evidence meets these standards. The record before the ALJ included evidence of Mr. Melton's mental impairments in the form of treatment notes from Dr. Cuka at Hope Community Services (HCS) from August 26, 2016 through March 17, 2017. (TR. 1158-1188, 1324-1355).

On August 26, 2016, Plaintiff presented to HCS and reported suffering from: mood lability, anger, anxiety, depression, and "moderate" difficulties with memory and concentration; interacting with peers and friends; social interaction; withdrawal; dealing with authority figures; and aggression. (TR. 1168-1169, 1177). Plaintiff was diagnosed with Major Depressive Disorder, recurrent, mild; Bipolar Disorder, current episode depressed, moderate; Schizoaffective Disorder, depressive type; and Anxiety Disorder. (TR. 1167). At that time, Mr. Melton was assessed with a "moderate" degree of mental impairment and a 6-month treatment plan was established. (TR. 1170).

From September 8, 2016 through March 2, 2017, Dr. Cuka treated Mr. Melton and:

- noted diagnoses of Bipolar Disorder and episodic Depression, severe, without psychotic features;
- noted that Plaintiff suffered from severe chronic anxiety and nervousness and angry/labile mood; and
- prescribed medication for Plaintiff's anxiety and mood.

(TR. 1158-1160, 1162, 1164, 1324, 1326-1335, 1337-1341).

On March 17, 2017, Plaintiff was reassessed with a "moderate" degree of mental impairment and another 6-month treatment plan was established. (TR. 1347-1350,

9

1354). When comparing the evidence before the ALJ (Dr. Cuka's treatment notes) and the evidence submitted to the Appeals Council (the MSA and RFC form), the Court concludes that the additional evidence is "new" and "material."

In the treatment notes, Dr. Cuka had:

- noted anger, labile mood, and chronic anxiety and nervousness;
- rated Plaintiff's overall impairment as "moderate;" and
- had not assessed any specific limitations.

*See supra*. But in the MSA and RFC form, Dr. Cuka noted "severe" and "extreme" impairments and noted specific work-related areas where Plaintiff was completely impaired. *See supra*.

Thus, the remaining issue is whether there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) & 416.1470(a)(5). The requirement that the additional evidence create a "reasonable probability" of changing the outcome of the decision was added to the regulations on January 17, 2017, with compliance required by May 1, 2017. *See* 81 Fed. Reg. 90,987 (Dec. 16, 2016), 2016 WL 7242991 (F.R.). The District of New Mexico and the District of Kansas have read the change as requiring a "heightened materiality standard." *See Casias v. Saul*, No. 1:18-CV-00537-LF, 2019 WL 4013890, at *3 (D.N.M. Aug. 26, 2019) ("The regulations that require a claimant to show a 'reasonable *probability* that the additional evidence would change the outcome of the decision' can be read as a heightened materiality standard; *Fletcher v. Saul*, No. CV 18-2085-KHV, 2019 WL 3765613, at *5 (D. Kan. Aug. 9, 2019) (same). Although the Tenth Circuit has not yet

recognized the distinction or commented on whether the addition to the regulation constitutes a "heightened" standard, in a different context, the Tenth Circuit Court of Appeals has stated that "a reasonable probability" is considered "a probability sufficient to undermine confidence in the outcome." *United States v. Deiter*, 890 F.3d 1203, 1209 (10th Cir. 2018). Under this standard, the Court finds that the MSA and the RFC form provide information which is sufficient to undermine confidence in the ALJ's decision.

For example, the new evidence showed significant difficulties in Plaintiff's abilities to:

- remember locations and work-like procedures;
- understand and remember very short, simple instructions;
- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods of time;
- complete a normal workday and work week (without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods);
- interact appropriately with the general public;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- set realistic goals or make plans independently of others;
- respond appropriately to changes in work setting;
- respond and adjust to the use of new and unfamiliar tools and/or machines.

(TR. 8-9, 12-14). The RFC stated that Plaintiff could perform simple and routine tasks … involving no more than occasional, superficial interaction with the general public … and no more that occasional interaction with coworkers. (TR. 38). Arguably, this RFC accounted for limitations involving Mr. Melton's abilities to:

- understand and remember detailed instructions;
- carry out detailed instructions; and
- interact appropriately with the general public.

But it did not account for the significant limitations involving Plaintiff's abilities to:

- remember locations and work-like procedures;
- understand and remember very short, simple instructions;
- maintain attention and concentration for extended periods of time;
- complete a normal workday and work week (without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods);
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- set realistic goals or make plans independently of others;
- respond appropriately to changes in work setting;
- respond and adjust to the use of new and unfamiliar tools and/or machines.

Thus, the Court finds there exists a reasonable probability "sufficient to undermine confidence in the outcome [of the ALJ's decision]" that had the ALJ considered the new evidence documenting Plaintiff's mental impairments, she would have included additional

limitations in the RFC—thus changing the outcome of the case. *See Ramey v. Berryhill*, No. 1:17-CV-00858 WJ/SCY, 2018 WL 4691657, at *3 (D.N.M. Sept. 14, 2018), *report and recommendation adopted*, No. CV 17-858 WJ/SCY, 2018 WL 4688386 (D.N.M. Sept. 29, 2018) (Appeals Council erred in failing to consider medical source statements related to the plaintiff's mental impairments which noted "marked" limitations in areas which were not accounted for in the RFC).

The additional evidence that was rejected by the Appeals Council is considered new, material, and chronologically pertinent. Furthermore, a reasonable probability exists, that if considered, the evidence would have changed the outcome of the ALJ's decision. As such, the Court finds error in the Appeals Council's failure to consider the additional evidence and remands this case so that the Appeals Council may reevaluate the ALJ's decision in light of the additional evidence.

## VI. PLAINTIFF'S REMAINING ALLEGATION OF ERROR

Mr. Melton also alleges that the ALJ erred at step five. (ECF No. 19:6-11). However, the Court should not address this argument, in order to allow the Appeals Council the first opportunity to evaluate the ALJ's decision in light of the complete record. *See Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) ("[T]he Appeals Council, which has the responsibility to determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record.") (internal quotation marks omitted).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on September 27, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE